337 P.2d 412

MILNE TRUCK LINE, INC., a corporation, Salt Lake-Kanab Freight Lines, Inc., a corporation, Palmer Bros., Inc., a corporation, Grant Crockett, d/b/a Murray and Midvale Truck Line, Consolidated Freightways, Inc., a corporation, and Carbon Motorway, Inc., a corporation, Plaintiffs,

v.

PUBLIC SERVICE COMMISSION OF UTAH and Hal S. Bennett, Donald Hacking and Jesse R. S. Budge, Commissioners of the Public Service Commission of Utah, and Union Pacific Motor Freight Company, a corporation, Defendants.

No. 8933.

Supreme Court of Utah.

March 26, 1959.

3. 4 Am.Jur. Brokers, Sec. 142, p. 1067, quoted in Reich v. Christopulos, 123 Utah 137, 256 P.2d 238.

Wood R. Worsley, Harold N. Wilkinson, S. N. Cornwall, Salt Lake City, for plaintiffs.

E. R. Callister, Jr., Atty. Gen., Bryan P. Leverich, A. U. Miner, Salt Lake City, for defendants.

WORTHEN, Justice.

Review of an order of the Public Service Commission of Utah granting to Union Pacific Motor Freight Company, also referred to herein as "Motor Freight," a certificate of convenience and necessity (909–Sub. 1) authorizing it to operate as a common motor carrier for the transportation of general commodities, with certain exceptions, in highway motor carrier service supplemental and auxiliary to and coordinated with freight service of the Union Pacific Railroad Company, over regular routes between certain designated points and places within the state of Utah served by the railroad company.

The Union Pacific Motor Freight Company is a wholly owned subsidiary of the

Union Pacific Railroad Company. On December 30, 1949, under case No. 3466, said freight line filed an application seeking a certificate of convenience and necessity to operate as a motor common carrier of property for hire in intrastate commerce, to-wit: general commodities in less-than-carload shipments, with certain exceptions, in highway motor carrier service supplemental and auxiliary to and coordinated with freight service of the Union Pacific Railroad Company over regular routes, engaging in the same operations on return movements, all between points and places within the state of Utah. The application recited that the applicant *"proposes to lease and operate at least seven trailers and nine semitrailers in performance of the transportation service proposed in its said application."*

The Commission, on September 28, 1950, granted Motor Freight certain limited rights. In its report in Case No. 3466 the Commission declared:

"That the following named highways among others over which applicant corporation proposes to operate to wit:

"From Ogden, Utah, via U. S. Highway 30s to Morgan, Henefer and Echo, Utah; thence over U. S. Highway 189 to Coalville; thence over U. S. Highway 189 and Utah State Highway No. 4 to Kimball's Junction, Utah; thence

over U. S. Highway 40 to Park City, Utah, and return same route. Also from Ogden, Utah, via U. S. Highway 89 and Utah State Highway 142 to Newton, Utah; thence over any State Highway to Trenton, Cache Junction, and Cornish, Utah, *are not unduly burdened with traffic."* (Emphasis added.)

The Commission denied the application of Motor Freight in all other respects except that just set out herein.

On October 24, 1949, the Interstate Commerce Commission issued its certificate of convenience and necessity No. MC–110388, authorizing Union Pacific Motor Freight Company to transport general commodities in interstate commerce over highways in the state of Utah from the Wyoming-Utah border and the Idaho-Utah border southerly as far as Lynndyl, Utah. Service was authorized by such highway vehicles over highways adjoining and paralleling the Union Pacific Railroad Lines to all points, but only to points which were rail stations on the rail lines of the Union Pacific.

Thereafter, under date of March, 1950, the Public Service Commission of Utah issued to Motor Freight *interstate* license No. 326 authorizing it to operate as a common motor carrier of general commodities in interstate commerce within the state of Utah, conforming to the I.C.C. order.

**EXHIBIT 1**

On January 28, 1958, Motor Freight filed its application in case 3466–Sub. 1 for a certificate of convenience and necessity to extend its authority to transport as supplementary and auxiliary to, and coordinated with the Union Pacific Railroad Company rail freight service, general commodities in less than carload lots over the routes shown on applicants' Exhibit 1 attached to its application. A copy of said Exhibit 1 is herein set out.

By its application in case 3466–Sub. 1, Motor Freight seeks to institute a service whereby it will transfer from rail movement all less-than-carload traffic and engage in the movement of such traffic over the highways of the state of Utah between stations shown on Exhibit 1, which are now served by the railroad company.

It was alleged that applicant is now and for some years past has been engaged in performing the service authorized under I.C.C. Certificate No. MC–110388 and under License No. 326 issued by the Public Service Commission, to-wit: in transporting merchandise in less-than-carload lots moving in interstate commerce.

It was also alleged that presently and for a considerable period of time past "applicant's highway vehicles are, and *have been operating with only a fraction of the capacity load which they could handle,* and over the routes herein sought carry only interstate traffic. At the same time, over the territory covered by the routes herein sought, the Union Pacific Railroad Company is compelled to operate and has been operating daily merchandise cars to handle and peddle to the various stations along its route a small amount of LCL freight tendered to it and transported by it to the various railway stations on the routes involved."

It was alleged that the equipment now operated by applicant in the territory involved will be the same equipment used by applicant in handling the proposed service; that no changes in schedules will be necessary, because the traffic can be handled on the existing schedules of applicant. It was alleged that competition between Motor Freight and other motor carriers of freight will not be increased for the reason that the service applicant seeks to render is now rendered by Union Pacific Railroad Company, and the proposed service will be auxiliary and supplemental to the rail service of said railroad. Applicant alleged that the burden of traffic on the highways over which applicant proposes to operate will not be increased because the traffic now handled in rail merchandise cars can and will be handled in motor vehicles already operated by applicant over such highways in interstate commerce.

Applicant alleged that public convenience and necessity require the proposed service in order that rail service over the Union Pacific Railroad lines (in the territory in-

volved) may be operated more efficiently and economically, and in order that badly needed boxcars will be released for other needed service; that the granting of the certificate applied for will be in the best interest of the people of the state of Utah; that applicant will handle less-than-carload shipments of merchandise in service auxiliary and supplemental to the rail service of the Union Pacific Railroad Company, thereby improving the delivery of such shipments as well as improving the operation of the trains now carrying said merchandise; that the elimination of rail cars from less-than-carload service results in improvement in switching service and in the handling of carload merchandise.

Applicant alleged that the present Union Pacific Railroad Company freight house and freight transfer personnel will continue to handle the receipts, billing and delivery of freight. Existing rail freight terminal facilities will be utilized, and pick-up and delivery services will be continued as provided by tariff. All shipments handled in the proposed auxiliary and supplemental highway service will move at rail rates, on rail billing and between rail stations of the Union Pacific Railroad Company.

After hearing, the Commission made its report, findings, conclusions and order. The Commission found the issues in applicant's favor and concluded that "it is deemed to be in the public interest to grant the application except as to the proposed service on Highway 40 between Salt Lake City and Park City."

Plaintiffs assail the order of the Commission, charging:

(1) That by its application Motor Freight sought to initiate a new and different system of transportation service.

(2) The service proposed by Motor Freight could be lawfully authorized only upon a finding of public convenience and necessity.

(3) No finding of public convenience and necessity as required by the statutes was made by the Commission.

As to point one, Motor Freight agrees with plaintiffs that it did seek authority for a different method of performing transportation service which its parent company has always performed. But it also asserts that the service sought is a different type of service than that rendered by plaintiffs. The service sought is not that of a general common motor carrier such as the service of plaintiffs. It is a substitute and auxiliary service; it is not a general common carrier. Motor Freight under the authority granted cannot pick up and discharge commodities generally throughout the entire area but can only pick up and discharge at points which are rail stations on the Union Pacific line. It cannot enter into any interchange agreements or establish through rates with other motor car-

riers; its schedules must be set up to meet train schedules.

■ We find no merit to plaintiffs' second and third points. Not only was there ample evidence to support a finding that public convenience and necessity justified the issuance of the certificate (909–Sub. 1) but such a finding was made by the Commission.

A reading of the allegations of the petition filed by Motor Freight set out herein discloses the basis upon which the Commission acted.

The Commission, having found the issues in applicant's favor, accepted the allegations of that petition set out herein. The Commission made, among others, the following findings of fact:

"3. For a considerable period prior to the filing of its application applicant's vehicles have been operated at less than capacity, and over the routes mentioned in its application which it here seeks to service, it carries only interstate commerce."

"4. That the Union Pacific Railroad Company transports general commodities in LCL lots, in intrastate commerce, in boxcars by rail, paralleling the highway routes now sought to be served by applicant (except the proposed route to Park City over Highway 40) and said boxcars, by reason of the limited quantity of such commodities offered for shipment, are loaded to only a fraction of their capacity. That the handling and unloading of various small shipments along said routes, entailing switching operations and other delays, causes said railroad company to incur the expense of five-man crews per train at the expense of $18.22 per hour and said operation necessarily keeps in service boxcars which in times of car shortages should be available for carload shipments. That during an average 21 work day month the railroad uses on all of said routes on which it renders said LCL service 172 boxcars for a period of 3 or 4 days each, whereas, if it were relieved of what is termed its merchandise peddling car service, by the proposed service, it would require for other business on said routes only 46 boxcars and there would be released for carload service approximately 126 boxcars for 3 or 4 days per month.

"5. The Union Pacific has no rail service between Salt Lake City and Park City except by way of Ogden, Echo and Coalville and as the service proposed by applicant is over highways paralleling the company's rail lines and to and from railroad stations in the application to operate over U. S. Highway 40 between Salt Lake City and Park City should be denied.

"6. Applicant proposes to take over from the railroad company the over-the-road transportation of general commodities in intrastate commerce, in less-than-carload lots, over said additional routes specified in its application; railroad freight house and freight handling personnel to continue to handle the receipts and deliveries of such freight. Also, existing rail freight terminal facilities are to be used and pickup and delivery service to be continued as provided by tariff. All shipments proposed to be handled in its auxiliary and supplementary highway service to be moved at railroad rates on rail billings between rail stations of the Union Pacific Railroad Company.

"7. The granting of said application will undoubtedly benefit the railroad company in saving expense in the operation of its train service over said routes and in the release to it for carload shipments of a large number of boxcars now used on said routes for LCL traffic. The applicant will likewise benefit by way of an increase of commodities for transportation in its presently partially loaded trucks. These benefits may to a degree prejudice competitors of the applicant because of inroads upon their business. However, there is a larger aspect of this matter to which benefits or dis-advantages resulting to the parties concerned must be subordinated, *and that is the public interest.* It is public convenience and necessity with which the Commission is primarily concerned. *Improved methods of transportation by an already operating carrier are to be encouraged* and regrettable as it may be that some other carrier may suffer, that fact is not a sufficient reason for preventing the use of improved methods; and this is so even though present service by present methods may in one sense be adequate. In one case wherein the same applicant was before the Wyoming Commission (Union Pacific Motor Freight Company v. Gallag[h]er Transfer & Storage Co., [72 Wyo. 298], 264 P.2d 771) the granting of a similar application was approved by the Supreme Court of Wyoming even though the railroad comjany, as in the case before us, was not a party to the proceeding. Although there is in this case no evidence that the routes in question are not adequately served we hold with the Wyoming Court and the Supreme Court of the United States (I. C. C. v. Parker, 326 U.S. 60 [65 S.Ct. 1490, 89 L.Ed. 2051]) that such evidence is not necessary as a condition to granting a certificate *for a different and improved method of operaation by an already certificated carrier.* If the proposed service will result in

a better and more economical service, the railroad company should be permitted, in the public interest to adopt the improved method.

"8. * * * As heretofore stated the above named competitors *may be* prejudiced *to a degree* by the service proposed but weighing all factors the Commission considers that the benefits, to flow *primarily to the public,* from the improved method of transportation and improved efficiency and economy of operation, outweigh any detriment that competitors may suffer and will not, in the opinion of the Commission, affect their ability to continue to serve the public along the routes over which they operate." (Emphasis added.)

The Commission did not make a positive finding that plaintiffs would be prejudiced by the service proposed. It found that the benefits flowing to petitioners "may to a degree" prejudice competitors of the applicant because of inroads upon their business. It is difficult to see how the issuance of the certificate to petitioners will put them in a new field of competition with plaintiffs. The burden of plaintiffs' point one is this: that the service proposed by Motor Freight is a new and different type of service. Not only is it different from the present peddling system in operation on the Union Pacific Railroad Company, but it is also different from the service which plaintiffs are authorized to render. Motor Freight may not go outside the limits of rendering auxiliary and supplementary service coordinated with the freight service of the Union Pacific Railroad Company. This removes it from competition with plaintiffs. It is circumscribed by being required to carry its freight auxiliary and coordinated with the railroad freight service. Likewise the service sought here could not well be performed by plaintiffs without extending to them the privilege of going into the railroad depot and taking freight from each freight house shown on the map herein and with the help of the freight handling personnel of the Union Pacific Railroad Company. As we view the case, Motor Freight will not be competing with plaintiffs. It renders a service which plaintiffs could not perform if Motor Freight did not perform it.

However, we are in accord with the order of the Commission. We agree that the larger aspect of the case, to-wit the overall benefit and convenience to the public generally is most important. Why time and money should be squandered in order to maintain the status quo of this slothful and wasteful method of peddling the intrastate freight from the nearly empty boxcars finds no sane answer. The Commission in making the order under the circumstances was acting in the best interest of the public. It is in the public interest

and convenience to release 126 boxcars that are not needed in such operation. To save the extra fuel required to drag them over the road is an economy that is in the public interest as well as in the interest of the railroad.

■ Plaintiffs state that petitioner by its application of January 28, 1958, in case 3466–Sub. 1, seeks in substance to obtain the authority which was denied by the Commission in Case 3466. It should be observed that it appears that one of the reasons for denying the portion of the application in Case 3466 now sought here was the hardships that would be imposed on the highways by putting motor vehicles on the highways to carry freight which was being carried by rail. That objection is not valid now. Under the I.C.C. order ratified by this Commission in its certificate No. 326, all necessary motor vehicles are already in use on the highways. Applicant does not seek to add additional motor vehicles but seeks only to more economically operate those now being used to carry merchandise moving in interstate commerce in less-than-carload lots. As heretofore stated herein, Motor Freight, in its application in Case 3466, proposed to put seven trailers and nine semi-trailers into service.

The Commission in its finding 7 observed:

"* * * Improved methods of transportation by an already operating carrier are to be encouraged. * * * If the proposed service will result in a better and more economical service the railroad company should be permitted, in the public interest, to adopt the improved method."

We are in accord with the above statement of the Commission. Order affirmed. No costs awarded.

CROCKETT, C. J., and McDONOUGH, J., concur.

WADE, J., concurs in the result.

HENRIOD, J., does not participate herein.