440 P.2d 972

**BARTON TRUCK LINE, INC., Plaintiff,**

v.

**PUBLIC SERVICE COMMISSION of Utah, Donald Hacking, Donald T. Adams and Hal S. Bennett, Commissioners of the Public Service Commission of Utah, and Union Pacific Railroad Company and Union Pacific Motor Freight Company, Defendants.**

No. 11071.

Supreme Court of Utah.

May 10, 1968.

Gustin & Richards, William S. Richards, Salt Lake City, for plaintiff.

Phil L. Hansen, Atty. Gen., Salt Lake City, for Public Service Commission.

A. U. Miner, Salt Lake City, for Union Pac. R. R. and Union Pac. Motor Freight.

ELLETT, Justice.

The Union Pacific Motor Freight Company, hereinafter called Motor Freight, is a wholly owned subsidiary belonging to the Union Pacific Railroad Company, hereinafter called Railroad. In 1958 the Public Service Commission of Utah granted to Motor Freight a certificate of convenience to operate as a common carrier over certain designated highways within the State of Utah. The certificate contained the following restriction: "All service restricted to and from Union Pacific Railroad Stations only * * * on the above routes." The certificate further provided: " * * * for the transportation of general commodities, * * * in highways motor service supplemental and auxiliary to, and coordinated with, freight service of the Union Pacific Railroad Company and in connection with the present authority held by applicant, [Motor Freight] engaging in the same operation on return movements, over the following routes: * * *."

While Motor Freight was issued and now holds a certificate of convenience mentioned above, it nevertheless has operated as a motor carrier only for Railroad pursuant to a written contract. It has filed no tariffs and receives no compensation from shippers. All charges for freight which it hauls are made by Railroad, and the only money received by Motor Freight is from and pursuant to the contract which it has with Railroad.

Under the contract, Motor Freight hauls LCL freight for Railroad and, in addition, performs pickup and delivery services at the area of some of the terminals where Railroad maintains stations. In addition

to the pickup service contracted for with Motor Freight, Railroad also has other agencies to make terminal pickup and delivery services at certain stations.

The original purpose of organizing Motor Freight was to permit LCL shipments to be made by motor truck rather than in railroad cars. This would be a much more economical means of transporting small shipments between towns served by Railroad. Originally, shipments were picked up by Motor Freight, taken to Railroad's depots, reloaded into other trailers, taken to various stations and warehouses of Railroad where they would be unloaded and then delivered by other trucks and at certain stations by agencies other than Motor Freight. This procedure was not always followed, and Motor Freight began hauling door to door in one truck from stations where it had the contract to make pickups to stations where it had the contract to make deliveries for Railroad. Barton Truck Lines contended that such services were in excess of authority granted under the certificate and that the only points of pickup and delivery by Motor Freight would be to and from the various stations of Railroad.

The Public Service Commission made an investigation and gave its interpretation of the authority granted in the certificate. It held that the word "station"

meant *station area* or *town* and was not confined just to the *depots* of Railroad. This proceeding before the court now is in effect an appeal from that determination.

On Pages 12 and 13 of its Findings of Fact, the Public Service Commission said:

12. Clearly from what we have stated above and under the authorization contained in Certificate of Convenience and Necessity No. 909 and Certificate of Convenience and Necessity No. 909-Sub 1, the Union Pacific Railroad Company may use the highway services of Motor Freight in moving its LCL freight from station to station in the involved area, so long as Motor Freight is carrying such Railroad freight and is using the highways specified in the certificates. This movement is and must be a station to station movement. Union Pacific Railroad Company may perform pickup and delivery service on LCL freight within its various station areas and it may do this with its own equipment and personnel, or by contract with any other truck carrier, or by contract with Union Pacific Motor Freight.

It was *not* the intent of the Commission in its original order granting the certificates in Case No. 3466 to allow Motor Freight to serve in the transportation of LCL traffic door-to-door between the consignor in one community direct to the consignee in another

community, and Motor Freight has no such authority. However, in a situation where Motor Freight is employed to make the pickup of freight at one station, Salt Lake City for instance, and carry the freight as provided under Certificate of Convenience and Necessity No. 909–Sub 1, to another station, Logan for instance, and is employed to make the delivery, and the same piece of equipment is used for pickup, over the road transportation, and the act of delivery, and no railroad station handling is involved, the total transportation has the appearance of a direct motor carrier service from the "store door" of the consignor in one community direct to the "store door" of the consignee in another community, but if the shipment and the consignor is within the station area of Salt Lake City and the highway movement between Salt Lake City and Logan is in accordance with the authorized highways, and the consignee at Logan is within the Logan station area, there is nothing improper involved, nor has the Union Pacific Motor Freight and/or Union Pacific Railroad Company acted beyond their authority.

This holding seems to be in the public interest. Where agencies other than Motor Freight are under contract to pick up and deliver freight for customers of Railroad, the freight to be transported by Motor Freight must still be worked over the docks at the freight depots at both the sending and receiving points. However, where Railroad has contracted with Motor Freight to pick up shipments from the consignor and to deliver it to the consignee, it would be an added burden ultimately to be borne by the shipper to have to load and unload the freight at the depots.

■■ The one most likely to know what was meant by a given expression is the one who made it. The Public Service Commission used the language, and it should know better than anyone else what was meant. As a matter of fact, to take the language literally, as plaintiff would have us do, would render the certificate of no force or effect whatsoever. If it should be held to restrict services to Railroad's depots only on the named routes, then no pickups or deliveries could be made by Motor Freight, for the simple reason that Railroad has no depots actually abutting the named highways. We think the interpretation of the Commission to the effect that "station" means the area of the town where the railroad has a depot located comports with reason and is neither arbitrary nor capricious.

The decision and order appealed from are hereby affirmed, with costs to defendants Union Pacific Railroad Company and Union Pacific Motor Freight Company.

CROCKETT, C. J., and CALLISTER and TUCKETT, JJ., concur.

HENRIOD, Justice (dissenting).

Respectfully I dissent. The main opinion has not explained away either Milne Truck Line v. Public Service Commission,[1] nor the P. S. C.'s earlier declaration that Motor Freight could *not* do what the Commission now says it *can* do.

The initial order of the Commission about one-half score years ago, seemed to be clarion clear, and Motor Freight interpreted it as Barton contends here by docking and undocking, loading and unloading for years at U. P.'s "station" on West South Temple,—not Sugarhouse, or any place else.

It may be true that the Commission's order of a decade ago may have been a bit inordinate from an economic standpoint,—but it was there, and now comes to plague interested parties, the Commission itself, and this court in the Milne case.

I think the ordinary connotation of the words "railroad station," to taxi drivers, the public and shippers generally, means a place where the trains pull in to take on and discharge passengers and freight. I think a new application should be entertained, rather than to "explain" that clear language "meant" something other than it said.

1. 9 Utah 2d 28, 337 P.2d 412 (1959).